LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JAVIER ESTRADA, ARMANDO GARCIA,
LUCERO AYALA VILLAR, LUISANGELA DUARTE,
and ULICES FAUSTO RAMALES,
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class,*

        Plaintiffs,

        v.

KINGSBRIDGE MARKETPLACE CORP.
d/b/a FOODTOWN,
VERNON MARKETPLACE, INC.
d/b/a FOODTOWN,
and ESMAIL MOBARAK,

        Defendants.

---

Case No.:  17 CV 9890

**SECOND AMENDED**
**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

**Jury Trial Demanded**

        Plaintiffs,  JAVIER  ESTRADA,  ARMANDO  GARCIA,  LUCERO  AYALA

VILLAR, LUISANGELA DUARTE and ULICES FAUSTO RAMALES ("Plaintiffs"), on

behalf of themselves and others similarly situated, by and through their undersigned

attorneys, hereby file this Second Amended Class and Collective Action Complaint

against Defendants, KINGSBRIDGE  MARKETPLACE  CORP.  d/b/a  FOODTOWN,

VERNON MARKETPLACE, INC. d/b/a FOODTOWN (the "Corporate Defendants"), ESMAIL MOBARAK, (the "Individual Defendant") (collectively, "Defendants"), and state as follows:

## INTRODUCTION

1.  Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid regular and overtime wages due to time shaving, (2) liquidated damages and (3) attorneys' fees and costs. Plaintiff GARCIA further alleges, pursuant to the FLSA, that he is entitled to damages based on Defendants' unlawful retaliation against him.

2.  Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid regular and overtime wages due to time shaving, (2) unpaid spread of hours premium, (3) liquidated damages, (4) statutory penalties and (5) attorneys' fees and costs. Plaintiff GARCIA further alleges, pursuant to the NYLL, that he is entitled to damages based on Defendants' unlawful retaliation against him.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.  Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.  Plaintiff, JAVIER ESTRADA, is a resident of Westchester County, New York.

6. Plaintiff, ARMANDO GARCIA, is a resident of Bronx County, New York.

7. Plaintiff, LUCERO AYALA VILLAR (a/k/a Lucero Ayala), is a resident of Westchester County, New York.

8. Plaintiff, LUISANGELA DUARTE, is a resident of New York County, New York.

9. Plaintiff, ULICES FAUSTO RAMALES (a/k/a Ulices Ramales), is a resident of Bronx County, New York.

10. Corporate Defendants:

(a) Defendant, KINGSBRIDGE MARKETPLACE CORP. d/b/a FOODTOWN is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 5555 Broadway, Bronx, NY, 10463. Defendant, KINGSBRIDGE MARKETPLACE CORP. owns and operates "Foodtown" supermarket, which is located at 5555 Broadway, Bronx, NY 10463 (the "Riverdale Supermarket").

(b) Defendant, VERNON MARKETPLACE, INC. d/b/a FOODTOWN is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 31 E Prospect Avenue, Mt Vernon, NY, 10550. Defendant, VERNON MARKETPLACE, INC. owns and operates "Foodtown" supermarket, which is located at 31 E. Prospect Avenue, Mt Vernon, NY, 10550 (the "Mt. Vernon Supermarket").

11. Upon information and belief, the individual Defendant, ESMAIL MOBARAK, is the Owner and Chief Executive Officer of both KINGSBRIDGE MARKETPLACE CORP. and VERNON MARKETPLACE, INC. ESMAIL

MOBARAK exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. ESMAIL MOBARAK exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class.

12. Upon information and belief, the Corporate Defendants KINGSBRIDGE MARKETPLACE CORP. and VERNON MARKETPLACE, INC., both of which do business as "Foodtown" (referred to hereinafter as the "Supermarkets"), operate as a "single integrated enterprise," under the control of Individual Defendant ESMAIL MOBARAK.

(a) Defendant ESMAIL MOBARAK operates the Supermarkets with a common wage and hour policy.

(b) The Foodtown Supermarkets maintain centralized payroll operations, labor relations, and human resources.

(c) Goods and supplies were freely interchangeable and transferred amongst the Supermarkets. Further, both supermarkets restock goods from a single warehouse which employees of both supermarkets are frequently required to visit for the purpose of picking up goods and supplies to replenish stocks at both locations.

(d) Employees were frequently required by management to interchange between the Supermarket locations by managerial employees on an as needed basis.

(e) The Supermarkets maintain a single website, www.myfoodtown.com, on which both the Riverdale and Mt. Vernon Supermarket locations are featured.

13. At all relevant times, each of the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

14. At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.  Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by Defendants on or after the date that is six years before the filing of the original Complaint ("FLSA Collective Plaintiffs").

16. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper wages due to time shaving. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

18. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at each of their business locations on or after the date that is six years before the filing of the original Complaint in this case as defined herein (the "Class Period").

19. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20. The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

21. Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay "spread of hours" premium; (ii) failing to pay the proper wages due to a policy of requiring uncompensated off the clock work; (iii) failing to provide proper wage and hour notice to

Class members, at date of hiring and annually, per requirements of the New York Labor Law; and (iv) failing to provide wage statements per requirement of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

23. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the

claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

     a) Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

     b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d) Whether Defendants failed to pay Plaintiffs and Class members for all hours worked due to time shaving;

e) Whether Defendants provided proper wage statements informing employees of information required to be provided on wage statements under the New York Labor Law;

f) Whether Defendants provided proper wage and hour notices to employees, including legally required information such as, *inter alia*, rate of compensation, trade name of employer at the beginning of employment and as required thereafter pursuant to the the New York Labor Law; and

g) Whether Defendants paid Plaintiffs and the Class members the New York State "spread of hours" premium when their workdays exceeded ten (10) hours.

## STATEMENT OF FACTS

### *Plaintiff JAVIER ESTRADA*

26. From in or about May 2010 until on or about July 1, 2017, Plaintiff ESTRADA was employed by Defendants as a stocking clerk at Defendants' "Foodtown" supermarket located at 5555 Broadway, Bronx, NY 10463.

27. Throughout Plaintiff ESTRADA's employment with Defendants, he regularly worked over 40 hours per week. Specifically, Plaintiff ESTRADA regularly worked for

approximately 12 hours a day on Mondays, Wednesdays, Fridays and Saturdays, and approximately 10 hours a day on Tuesdays and Thursdays, for a total of approximately 68 hours per workweek.

28. At all relevant times between 2011 and January 2017, Plaintiff ESTRADA's regular rate of pay was the prevailing New York State minimum wage. Then, from January 2017 until his termination in July 2017, Plaintiff ESTRADA's rate of pay for regular hours was $12.50 per hour. At all relevant times, Plaintiff ESTRADA's overtime rate of pay was 1.5 times his regular rate of pay.

29. Throughout Plaintiff ESTRADA's employment period, Defendants required him not to clock in until he worked for approximately 1-2 hours, and continue working for approximately 1-2 hours after he clocked out. Defendants refused to compensate Plaintiff ESTRADA for this daily mandatory off the clock working time, resulting in approximately 6-12 unpaid regular and overtime hours per week. Likewise, FLSA Collective Plaintiffs and Class Members were frequently required to work without compensation before clocking in and after clocking out, resulting in unpaid regular and overtime compensation.

30. Throughout Plaintiff ESTRADA's employment, he was frequently required to work shifts exceeding 10 hours in duration. However, Defendants failed to pay him spread-of-hours premium for approximately 1-2 days per week that his shift exceeded 10 hours in duration. Likewise, Defendants failed to pay Class Members spread of hours premium for at least1 day per week on which their shifts exceeded 10 hours in duration, in violation of the NYLL.

31. Plaintiff ESTRADA was never provided proper wage and hour notices during his period of employment. The wage and hour notices provided to him were not compliant with the New York Labor Law, as they incorrectly stated the regular and overtime rates of pay that Plaintiff ESTRADA earned. The rates included on the wage and hour notices were higher than the actual hourly rates earned due to Defendants' failure to pay Plaintiff ESTRADA for all regular and overtime working hours. Likewise, the wage and hour notices given to Class Members did not comply with the New York Labor Law as they incorrectly stated the regular and overtime rates of pay earned by Class Members.

32. Plaintiff ESTRADA was never provided proper wage statements during his period of employment. To the extent that wage statements were provided, they were not compliant with the New York Labor Law, as they incorrectly stated the regular and overtime rates of pay that Plaintiff ESTRADA earned and the hours that Plaintiff ESTRADA worked. The rates specified on the wage statements were higher than the actual hourly rates earned, and the hours worked lower than the hours actually worked, due to Defendants' failure to pay Plaintiff ESTRADA for all regular and overtime working hours. Likewise, the wage statements given to Class Members did not comply with the New York Labor Law as they incorrectly stated the regular and overtime rates of pay earned and hours worked by Class Members.

### *Plaintiff ARMANDO GARCIA*

33. From in or about June 2010 until on or about July 9, 2018, Plaintiff GARCIA was employed by Defendants as a deli manager at Defendants' "Foodtown" supermarket located at 31 E Prospect Avenue, Mt. Vernon, NY 10550.

34. Throughout Plaintiff GARCIA's employment with Defendants, he regularly worked over 40 hours per week. Specifically, Plaintiff GARCIA regularly worked for 12 hours a day, 6 days per week, for a total of approximately 72 hours per workweek.

35. Plaintiff GARCIA's regular rate of pay in 2011 was $7.25 per hour. Between 2011 and January 2018, Plaintiff GARCIA's regular rate of pay was increased by approximately 50 cents per hour on a biannual or annual basis. Pursuant to these increases, Plaintiff GARCIA's final regular rate of pay (from January 2018 until his termination in July 2018) was $14.85 per hour. At all relevant times, Plaintiff GARCIA's overtime rate of pay was 1.5 times his regular rate of pay.

36. Throughout Plaintiff GARCIA's employment period, Defendants required him not to clock in until he worked for approximately 1-2 hours, and then to continue working for approximately 1-2 hours after he was made to clocked out. Defendants refused to compensate Plaintiff GARCIA for this daily mandatory off the clock working time, resulting in approximately 6-12 unpaid regular and overtime hours per week. Likewise, FLSA Collective Plaintiffs and Class Members were frequently required to work without compensation before clocking in and after clocking out, resulting in unpaid regular and overtime compensation.

37. Throughout Plaintiff GARCIA's employment, he was frequently required to work shifts exceeding 10 hours in duration. However, Defendants failed to pay him spread-of-hours premium for all days on which his shift exceeded 10 hours in duration, in violation of the NYLL. Likewise, Defendants failed to pay Class Members spread of hours premium for at least 1 day per week upon which spread of hours premium was due.

38. Plaintiff GARCIA was never provided proper wage and hour notices during his period of employment. The wage and hour notices provided were not compliant with the New York Labor Law, as they incorrectly stated the regular and overtime rates of pay that Plaintiff GARCIA earned. The rates included on the wage and hour notices were higher than the actual hourly rates earned due to Defendants' failure to pay Plaintiff GARCIA for all regular and overtime working hours. Likewise, the wage and hour notices given to Class Members did not comply with the New York Labor Law as they incorrectly stated the regular and overtime rates of pay earned by Class Members.

39. Plaintiff GARCIA was never provided proper wage statements during his period of employment. To the extent that wage statements were provided, they were not compliant with the New York Labor Law, as they incorrectly stated the regular and overtime rates of pay that Plaintiff GARCIA earned and the hours that Plaintiff GARCIA worked. The rates specified on the wage statements were higher than the actual hourly rates earned, and the hours worked lower than the hours actually worked, due to Defendants' failure to pay Plaintiff GARCIA for all regular and overtime working hours. Likewise, the wage statements given to Class Members did not comply with the New York Labor Law as they incorrectly stated the regular and overtime rates of pay earned and hours worked by Class Members.

40. Plaintiff GARCIA was fired by Defendants on or about June 9, 2018, after he complained to Defendants about their requirement that, as a condition of continued employment, he sign an arbitration agreement, under which he would be required to forego his rights pursuant to the FLSA and NYLL (including his right to bring suit

against Defendants in court and his right to represent a collective and/or class action of similarly situated employees).

41. Plaintiff GARCIA's termination constituted unlawful retaliation under the FLSA and NYLL. It resulted directly from his refusal to give up his rights under the FLSA and NYLL, and occurred after he complained to Defendants regarding their policy of requiring him to give up such right.

### *Plaintiff LUCERO AYALA VILLAR*

42. From in or about June 2014 until in or about April 2015, Plaintiff AYALA VILLAR was employed by Defendants as a cashier at Defendants' "Foodtown" supermarket located at 31 E Prospect Avenue, Mt. Vernon, NY 10550. Then from in or about July 2015, until in or about March 2018, Plaintiff AYALA VILLAR was employed by Defendants as a cashier at the same "Foodtown" location.

43. Throughout Plaintiff AYALA VILLAR's employment with Defendants, she regularly worked over 40 hours per week. Specifically, Plaintiff AYALA VILLAR regularly worked for 11 hours a day, 5 days per week, for a total of approximately 55 hours per workweek.

44. At all relevant times between June 2014 and March 2018, Plaintiff AYALA VILLAR's regular rate of pay was the prevailing New York State minimum wage. At all relevant times, Plaintiff AYALA VILLAR's overtime rate of pay was 1.5 times his regular rate of pay.

45. Throughout Plaintiff AYALA VILLAR's employment period, approximately once per week Defendants required her to work for approximately 1-2 hours before clocking in.  Approximately twice per week Defendants also required Plaintiff AYALA

VILLAR to continue working for approximately 1-2 hours after she was made to clock out. Plaintiff AYALA VILLAR was required to clock out for a 30 minute lunch break, but was not provided a free and clear lunch break as she was required to work through it. Defendants refused to compensate Plaintiff AYALA VILLAR for this daily mandatory off the clock working time, resulting in approximately 5.5-8.5 unpaid regular and overtime hours per week. Likewise, FLSA Collective Plaintiffs and Class Members were frequently required to work without compensation before clocking in and after clocking out, and during mandatory off-the-clock break periods, resulting in unpaid regular and overtime compensation.

46. Throughout Plaintiff AYALA VILLAR's employment, she was frequently required to work shifts exceeding 10 hours in duration. However, Defendants failed to pay her spread-of-hours premium for all days on which his shift exceeded 10 hours in duration, in violation of the NYLL. Likewise, Defendants failed to pay Class Members spread of hours premium for at least 1 day per week upon which spread of hours premium was due.

47. Plaintiff AYALA VILLAR was never provided proper wage and hour notices during her period of employment. The wage and hour notices provided were not compliant with the New York Labor Law, as they incorrectly stated the regular and overtime rates of pay that Plaintiff AYALA VILLAR earned. The rates included on the wage and hour notices were higher than the actual hourly rates earned due to Defendants' failure to pay Plaintiff AYALA VILLAR for all regular and overtime working hours. Likewise, the wage and hour notices given to Class Members did not comply with the

New York Labor Law as they incorrectly stated the regular and overtime rates of pay earned by Class Members.

48. Plaintiff AYALA VILLAR was never provided proper wage statements during her period of employment. To the extent that wage statements were provided, they were not compliant with the New York Labor Law, as they incorrectly stated the regular and overtime rates of pay that Plaintiff AYALA VILLAR earned and the hours that Plaintiff AYALA VILLAR worked. The rates specified on the wage statements were higher than the actual hourly rates earned, and the hours worked lower than the hours actually worked, due to Defendants' failure to pay Plaintiff AYALA VILLAR for all regular and overtime working hours. Likewise, the wage statements given to Class Members did not comply with the New York Labor Law as they incorrectly stated the regular and overtime rates of pay earned and hours worked by Class Members.

### *Plaintiff LUISANGELA DUARTE*

49. From in or about April 2012 until in or about November 2012, Plaintiff DUARTE was employed as a cashier at Defendants' "Foodtown" supermarket located at 5555 Broadway, Bronx, NY 10463. From in or about November 2012 until November 2016 Plaintiff DUARTE was employed at the same "Foodtown" location as a scanning coordinator. From in or about November 2016 until in or about March 2017, Plaintiff DUARTE was employed at the same "Foodtown" location as a receiving coordinator. From in or about March 2017 until termination in or about November 2017 Plaintiff DUARTE was employed at the same "Foodtown" location as a cashier.

50. Throughout Plaintiff DUARTE's employment with Defendants, she regularly worked over 40 hours per week. Specifically, Plaintiff DUARTE regularly worked for 11 hours a day, 5 days per week, for a total of approximately 55 hours per workweek.

51. Plaintiff DUARTE's regular rate of pay when starting was $7.25 per hour. Between April 2012 and until November 2016, Plaintiff DUARTE's regular rate of pay was increased by approximately 50 cents per hour on an annual basis. In November 2016, when Plaintiff DUARTE's position changed to receiving coordinator, she was paid at a regular rate of $12.50 per hour. Plaintiffs final rate of compensation, assigned in or about January 2017, was $13.00 per hour. At all relevant times, Plaintiff DUARTE's overtime rate of pay was 1.5 times his regular rate of pay.

52. Throughout Plaintiff DUARTE's employment period, approximately once per week Defendants required her to work for approximately 1-2 hours before clocking in. Approximately twice per week Defendants also required Plaintiff DUARTE to continue working for approximately 1-2 hours after she was made to clock out. Plaintiff DUARTE was required to clock out for a 30 minute lunch break, but was not provided a free and clear lunch break as she was required to work through it. Defendants refused to compensate Plaintiff DUARTE for this daily mandatory off the clock working time, resulting in approximately 5.5-8.5 unpaid regular and overtime hours per week. Likewise, FLSA Collective Plaintiffs and Class Members were frequently required to work without compensation before clocking in and after clocking out, and during mandatory off-the-clock break periods, resulting in unpaid regular and overtime compensation.

53. Throughout Plaintiff DUARTE's employment, she was frequently required to work shifts exceeding 10 hours in duration. However, Defendants failed to pay her

spread-of-hours premium for all days on which her shift exceeded 10 hours in duration, in violation of the NYLL. Likewise, Defendants failed to pay Class Members spread of hours premium for at least 1 day per week upon which spread of hours premium was due.

54. Plaintiff DUARTE was never provided proper wage and hour notices during her period of employment. The wage and hour notices provided were not compliant with the New York Labor Law, as they incorrectly stated the regular and overtime rates of pay that Plaintiff DUARTE earned. The rates included on the wage and hour notices were higher than the actual hourly rates earned due to Defendants' failure to pay Plaintiff DUARTE for all regular and overtime working hours. Likewise, the wage and hour notices given to Class Members did not comply with the New York Labor Law as they incorrectly stated the regular and overtime rates of pay earned by Class Members.

55. Plaintiff DUARTE was never provided proper wage statements during her period of employment. To the extent that wage statements were provided, they were not compliant with the New York Labor Law, as they incorrectly stated the regular and overtime rates of pay that Plaintiff DUARTE earned and the hours that Plaintiff DUARTE worked. The rates specified on the wage statements were higher than the actual hourly rates earned, and the hours worked lower than the hours actually worked, due to Defendants' failure to pay Plaintiff DUARTE for all regular and overtime working hours. Likewise, the wage statements given to Class Members did not comply with the New York Labor Law as they incorrectly stated the regular and overtime rates of pay earned and hours worked by Class Members.

**_Plaintiff ULICES FAUSTO RAMALES_**

56. From approximately 2005 until in or about November 2016, Plaintiff RAMALES was employed as a deli employee at Defendants' "Foodtown" supermarket located at 5555 Broadway, Bronx, NY 10463.

57. Throughout Plaintiff RAMALES' employment with Defendants, he regularly worked over 40 hours per week. Specifically, Plaintiff RAMALES regularly worked for 11 hours a day, 5 days per week, for a total of approximately 55 hours per workweek.

58. Plaintiff RAMALES' regular rate of pay in 2011 was $7.25 per hour. Between 2011 and until November 2016, Plaintiff RAMALES' regular rate of pay was increased by approximately 50 cents per hour on an annual basis. Pursuant to these increases, Plaintiff RAMALES' final rate of compensation (from January 2016 until his termination in November 2016) was $9.75 per hour. At all relevant times, Plaintiff RAMALES' overtime rate of pay was 1.5 times his regular rate of pay.

59. Throughout Plaintiff RAMALES' employment period, approximately once per week, Defendants required him to work for approximately 1-2 hours before clocking in. Approximately twice per week Defendants also required Plaintiff RAMALES' to continue working for approximately 1-2 hours after he was made to clock out. Plaintiff RAMALES was required to clock out for a 30 minute lunch break, but was not provided a free and clear lunch break as he was required to work through it. Defendants refused to compensate Plaintiff RAMALES for this daily mandatory off the clock working time, resulting in approximately 5.5-8.5 unpaid regular and overtime hours per week. Likewise, FLSA Collective Plaintiffs and Class Members were frequently required to work without

compensation before clocking in and after clocking out, resulting in unpaid regular and overtime compensation.

60. Throughout Plaintiff RAMALES' employment, he was frequently required to work shifts exceeding 10 hours in duration. However, Defendants failed to pay him spread-of-hours premium for all days on which his shift exceeded 10 hours in duration, in violation of the NYLL. Likewise, Defendants failed to pay Class Members spread of hours premium for at least 1 day per week upon which spread of hours premium was due.

61. Plaintiff RAMALES was never provided proper wage and hour notices during his period of employment. The wage and hour notices provided were not compliant with the New York Labor Law, as they incorrectly stated the regular and overtime rates of pay that Plaintiff RAMALES earned. The rates included on the wage and hour notices were higher than the actual hourly rates earned due to Defendants' failure to pay Plaintiff DUARTE for all regular and overtime working hours. Likewise, the wage and hour notices given to Class Members did not comply with the New York Labor Law as they incorrectly stated the regular and overtime rates of pay earned by Class Members.

62. Plaintiff RAMALES was never provided proper wage statements during his period of employment. To the extent that wage statements were provided, they were not compliant with the New York Labor Law, as they incorrectly stated the regular and overtime rates of pay that Plaintiff RAMALES earned and the hours that Plaintiff RAMALES worked. The rates specified on the wage statements were higher than the actual hourly rates earned, and the hours worked lower than the hours actually worked, due to Defendants' failure to pay Plaintiff RAMALES for all regular and overtime working hours. Likewise, the wage statements given to Class Members did not comply

with the New York Labor Law as they incorrectly stated the regular and overtime rates of pay earned and hours worked by Class Members.

63**.** Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage and overtime premiums due to a policy of "time shaving." This included requiring off-the-clock work prior to and before each shift and during mandated off-the-clock mid-shift breaks.

64.  Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs and Class members.

65.   Defendants knowingly and willfully operated their business with a policy of not providing proper wages statements to Plaintiffs and Class members as required under the New York Labor Law.

66.  Defendants knowingly and willfully failed to provide proper wage and hours notice at the times required under the NYLL to Plaintiffs and Class Members.

67. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

68. Plaintiffs reallege and reaver Paragraphs 1 through 67 of this Second Amended Class and Collective Action Complaint as if fully set forth herein.

69. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning

of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

70. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

71. Upon information and belief, at all relevant times, each of the Corporate Defendants had gross annual revenues in excess of $500,000.

72. At all relevant times, the Defendants had a policy and practice of refusing to pay the proper wages to Plaintiffs and FLSA Collective Plaintiffs for their hours worked due to Defendants' policy of time shaving.

73. Defendants failed to pay Plaintiffs and FLSA Collective Plaintiffs their wages in the lawful amount for their hours worked.

75. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

75. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

76. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

77. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, plus an equal amount as liquidated damages.

78. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of his reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

79. Plaintiffs reallege and reaver Paragraphs 1 through 79 of this Second Amended Class and Collective Action Complaint as if fully set forth herein.

80. At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

81. Defendants willfully violated Plaintiffs and Class members' rights by failing to pay Plaintiff wages in the lawful amount for hours worked due to time shaving.

82. Plaintiffs and Class members sometimes worked more than ten (10) hours in a workday. Defendants willfully violated Plaintiffs and Class members' rights by failing to pay "spread of hours" premium to Plaintiffs and Class members.

83. Defendants knowingly and willfully operated their business with a policy not providing proper wage statements to Plaintiffs and Class members, in violation of the New York Labor Law.

84. Defendants willfully violated Plaintiffs and Class members' rights by failing to provide them proper wage notice, at the date of hiring and annually, in violation of the New York Labor Law.

85. Due to the Defendants' New York Labor Law violations, Plaintiffs and Class

members are entitled to recover from Defendants unpaid proper wages due to time shaving, unpaid "spread of hours" premium, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.   A declaratory judgment that Defendants engaged in unlawful employment practices under the FLSA and New York Labor Law.

c.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.   An award of unpaid wages due under the FLSA and the New York Labor Law due to Defendants' policy of time shaving;

e.   An award of unpaid "spread of hours" premium due under the New York Labor Law;

f.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wage and "spread of hours" premium pursuant to the New York Labor Law;

g.   An award of punitive damages;

h.    An award of prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.    Designation of Plaintiffs as the Representatives of the FLSA Collective Plaintiffs;

j.    Designation of this action as a class action pursuant to F.R.C.P. 23;

k.    Designation of Plaintiffs as Representatives of Class; and

l.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:  May 6, 2019

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

By:   */s/ C.K. Lee*
        C.K. Lee (CL 4086)